CASE 116—EQUITY—JANUARY 25, 1883.

## Anderson, assignee, &c., v. Anderson, &c.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. A conveyance made by a husband on the verge of bankruptcy to his wife of a valuable tract of land, upon the ground of an alleged agreement between them many years before, and not satisfactorily proved, that having reduced to possession the wife's distributable share in her father's estate, he would thereafter convey land to her, is void as to his creditors.

Anderson, assignee, &c., v. Anderson, &c.

2. The conveyance from A. H. Anderson to Clay is void as to the creditors of the former.

3. The latter's affidavit in bankruptcy, that he held no interest in real estate, either under his own control or "held by any other person for his use," effectually disposes of his claim to the larger tract of land in controversy.

4. The right of action is in the assignee in bankruptcy of the debtor, whose duty it is to sue for the benefit of all the creditors of A. H. Anderson, the bankrupt.

5. Inasmuch as the action is not collaterally to attack the discharge in bankruptcy of either of the bankrupts to set aside the conveyances as fraudulent, the circuit court has jurisdiction.

6. Each right of action grew out of the fraud in which the several defendants participated, and there is therefore no misjoinder of actions.

REID & STONE FOR APPELLANTS.

1. Both of the deeds were executed the same day, and at the time they were executed A. H. Anderson was hopelessly insolvent. He owed twice as much as he could pay. Every fact in the case leads inevitably to the conclusion that the deeds are fraudulent.

2. It must be conceded that postnuptial contracts between husband and wife are void at law. We also concede that, under some circumstances, they may be upheld in equity when founded on a fair, valid, and sufficient consideration.

3. The first class of cases where contentions have arisen between the wife and the creditors of the husband, growing out of postnuptial contracts, is, that when the wife has a valid equity, established either by parol or writing not coupled with the legal title, the claims of the husband's creditors are superior to hers. (Young v. Nesbitt, MS. Op., Cope, J., Sept., 1876; Marriman v. Marriman, 3 Met., 84; Darnaby v. Darnaby's assignee, 14 Bush, 485.)

4. The second, where, in the case of postnuptial agreements, the wife has the legal title coupled with an equity founded on a good consideration and untainted by fraud. (Latimer v. Glenn, 2 Bush, 535; Ward v. Crotty, 4 Met., 59; Campbell v. Galbraith, 12 Bush, 460; Faris v. Dunn, 7 Ib., 276; Miller v. Edwards, 7 Ib., 394.)

5. In this case, where the wife, without her knowledge, invested with the legal title, her equity is not valid, is without any consideration whatever, and tainted with fraud. If the husband made any promise to invest his wife's money in real estate, there was no consideration for the promise. None of it is pretended to be the proceeds of the sales of the wife's lands. When he got the money and reduced it to possession, it became his absolutely. (Pryor v. Smith, 4 Bush, 379; Latimer v. Glenn, 2 Ib., 535.)

6. We submit that, under sections 5128 and 5129 of the Bankrupt Act,. the conveyances to Mrs. Anderson cannot stand.

7. It is claimed by appellees that the prayer of the petition is not broad enough to embrace any relief. The suit is brought under the former Code. Under a prayer for general relief, plaintiff was allowed the specific relief he was entitled to. (Edwards v. Bohannon, 2 Dana, 98; 3 Bush, 187; Bates v. Buchanan, 2 *Ib.*, 117.)

8. The right of an assignee in bankruptcy to choose the forum in which he will sue to set aside a fraudulent conveyance made by the bankrupt is well settled. (Boone's assignee v. Hall, 7 Bush, 66; Bankrupt Act, sec. 4972; Bump's Law and Prac. Bank., 232, 392; 8 H. R., 193; 2 Dillon, 504; 15 H. R., 353; S. C., 4; A. S. T. (N. S.), 21; 1 W. & M., 195; Smith v. Babcock, 2 *Ib.*, 246; 35 Texas, 171; 11 Paige,. 535; 17 Ohio, 362; 18 How., 106; 3 B. M., 115; 3 Dana, 509.)

B. J. PETERS, WM. H. HOLT, AND CHARLES EGINTON FOR APPELLEES.

1. Neither the original nor cross-petition contains any sufficient description of the land conveyed to Mary Anderson, and the suit as to it was properly dismissed. (Civil Code, sec. 152; Kearney v. City of Covington, 1 Met., 339.)

2. The action should have been dismissed both as to Mary Anderson and Clay, upon motion to compel plaintiff to elect which cause of action he would prosecute. (Civil Code, sec. 111.)

3. The circuit court had no jurisdiction. (Bump's L. and P. in Bankruptcy, 525; Thurmond v. Anderson, 10 Bush, 400; Bankrupt Act, sec. 34.)

4. Fraud must be proven in equity as well as at law. (Marksberry v. Taylor, 10 Bush, 519; Athey v. Knotts, 6 B. Mon, 24; Mallory v. Mallory, 5 Bush, 464; Faris v. Dunn, 7 Bush, 276; Miller v. Edwards, 7 Bush, 394; Latimer v. Glenn, 2 Bush, 535; 5 *Ib.*, 56; 4 J. J. Mar.,. 552.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

A. H. Anderson became the owner, by deeds of' conveyance, of about eleven hundred and sixty-two acres of land, which he acquired, from time to time, during a period of twenty-five years, prior to January 1, 1870.

He became largely involved in debt as the surety of his. brother, J. J. Anderson, and his nephew, T. C. Anderson, who mortgaged, to a .considerable extent, their lands early in January, 1874, obtaining large sums of money thereon,

and on the 29th of that month, and on the 23d February
following, they respectively filed their petitions in bank-
ruptcy.

They lived in adjoining counties, connected by fine turn-
pike roads, and not over six hours' ride from each other.

Their combined indebtedness exceeded the value of all
their property.

During these transactions by J. J. and T. C. Anderson,
on the 12th of the January named, A. H. Anderson, with-
out communicating his purpose to his wife, went into the
town of Winchester, the county seat of his county, and
conveyed of his lands, by general warranty deeds, which
he acknowledged, and were put to record, 129 acres to his
wife Mary, 223 acres to his nephew, A. A. Clay, and
294 acres, 3 roods, and 12 square poles to his brother-in-
law, John H. Goff.

The deed to John H. Goff recited the consideration as
$10,780 cash in hand paid; and to make assurance doubly
sure, the clerk of the county court was requested to count
the money, and make a memorandum of the sum and his
act at the foot of the deed, which he did.

Goff, becoming dissatisfied with this transaction, in which
he took part by borrowing every dollar of the $10,780 on
the day it took place, the *pro forma* sale and conveyance
were retracted on the 2d of February, and Goff reconveyed
the lands to A. H. Anderson for the same sum and the
same money, which Anderson had taken home with him
and kept during the interval between the deeds from each
to the other.

Eighteen days thereafter, on February 20th, A. H. An-
derson filed his petition in bankruptcy, and surrendered the

294 acres, 3 roods, and 12 square poles as the only assets to which his creditors were entitled.

Sixty acres thereof were set apart to him as a homestead, and his wife, the appellee, Mary Anderson, bought the remainder of the tract at the assignee's sale, and has paid about $6,000, or two thirds of the purchase-money therefor.

There was a lien on 90 or 95 acres of his land in favor of Clark county. The lien was asserted, the land sold, and again the appellee Mary Anderson became the purchaser.

Four hundred and twenty-six acres, known as the Rush and Pace places, were sold for the purchase-money, which he owed before going into bankruptcy, and failed to bring the amount due.

Thus it is seen, that of the fine bodies of land owned by A. H. Anderson, as the deed-books of his county showed, on the day before the 12th of January, 1874, 426 acres were sold for the purchase-money; 453 acres, 3 roods, and 12 poles became the property of his wife; 223 acres were deeded to his nephew, and 60 acres were laid off to him as a homestead.

Such results are remarkable, in view of the fact that his nephew was insolvent on the 23d of January, 1870, and his wife alleges, as an equity to sustain the legal title to the 129 acres conveyed to her on the 12th of January, 1874, by her husband, that he received and used the $8,000 to $10,000 in personalty, which was distributed to her from her father and mother's estate, with the understanding and agreement that he would invest it in this identical 129 acres of land, because it was the old homestead; as before the nephew could have paid for the 223 acres he must have had the means to do it with, and as the wife could not

Anderson, assignee, &c., v. Anderson, &c.

have paid for 453 acres, 3 roods, and 12 poles, unless she had other means than her distributable share of her father and mother's estate.

This it is claimed she did have from the rents of 120 acres, which was conveyed in trust by her husband in lieu of other lands descended to her from her father; but the amount of those rents are not shown, and as her land was general estate, and its use and occupation expressly reserved to her husband during his life, he was in law entitled to the rents; and, therefore, that source furnishes no proof of her financial ability to pay the purchase-money for the lands she bought at the assignee's sale, and in discharge of Clark county's lien.

She has, therefore, paid for the lands with rents belonging to her husband, or with her distributable estate; if the former, an equitable settlement in fact has been made upon her far beyond the amount of personalty received by her husband through her; if the latter, then there is no equitable consideration to support the legal title which she holds to the 12 acres conveyed to her on the 12th January, 1874.

Supplementary to the inexorable logic of these facts, it appears that the husband received about $3,000 from her father's estate, and used it as he did his other money; and this occurred more than twenty years before the deed was made to her for the 129 acres, and eighteen years before the home or dower farm, to which 104 acres of it belonged, was divided.

Added to this great lapse of time, and the actual reduction of her distributable share to the possession and use of her husband, it appears that he accepted and held the recorded legal title to the dower interest from 1866 and 1869, until accumulating and vast indebtedness made bankruptcy

inevitable and easy to be discovered by the most ordinary understanding.

Then, and not until then, was there any complaint by her, or admission by him, that he had violated an agreement with her to invest her money in land for her benefit.

It was too late, and of extremely doubtful legality in any event, and at any time after the reduction to possession by the husband of her distributable money, in the manner and under the circumstances he did reduce it, for him to convey the 129 acres to her, and relegate his creditors to the slim *pro rata* of bankrupt distribution, when it is shown that he was alive to his duty of making a settlement of the proceeds of her real estate upon her, because of her childless condition, to avoid, it is supposed, in case of death, the devolution of her property upon his heirs.

Had the same sense of duty prompted him, he would not have bought lands with her money which he had reduced to possession, and taken the conveyances to himself, and held them until the waves of bankruptcy were rolling up around him, and soon to overwhelm him.

Whatever may be said of his standing, or of the purity of his purpose in restoring unto his wife her patrimony, the law applicable to the recited facts forbade the conveyance to his wife of the 129 acres on the 12th of January, 1874, and we are constrained, by obedience to judicial duty, to hold that it is illegal and void.

As to the 223 acre tract which was conveyed to appellee Clay, it appears from the written evidence of record that T. J. Holly in January, 1870, conveyed it to A. H. Anderson, in consideration of $11,000, $3,000 thereof cash, and the remainder to be paid in whisky. The deed states that Anderson was the purchaser; and one of his kinswomen,

Mrs. Thompson, testified that he claimed it afterwards as his land, although she modified her statement on re-examination.

On the 5th December, 1872, he leased it to the appellee Clay for the period of four years, to begin on the first day of the succeeding January. The lease stated the consideration as " one dollar, and services heretofore rendered me by said Clay," and was duly acknowledged and recorded.

It was listed to him as his property, and so far as any writing or record produced as evidence in the case shows, A. H. Anderson was the absolute owner, exercising the powers of control by leasing it as his own property until the 12th of January, 1874, when he conveyed it to his nephew, the appellee Clay, along with the other conveyances mentioned. The deed to him states that the consideration was " $5,000 *cash in hand paid*," and that the land is " *the same tract of land sold to the said A. H. Anderson by T. J. Holly.*"

In order to sustain this conveyance, A. H. Anderson and the appellee Clay now claim that the deed from Holly to A. H. Anderson, and the lease from the latter to Clay, were fraudulently executed, and so procured to be executed to protect the land from Clay's creditors, while he took the bankrupt law against their debts. This, of course, is not the language of these appellees, but it is the legal effect of their pleadings, and plain meaning of their testimony.

The appellee Clay testified that he bought the land from Holly in November, 1869, and suggests that he had a bond, but it is lost, and no attempt to prove its contents was made, and Holly's deposition is not taken.

He filed his petition in bankruptcy on the 30th day of March, 1870, and was discharged from his creditors on

the 26th of January, 1871.    He did not surrender a single·
dollar's worth of property for their benefit, and in schedule
"B," filed with his petition in bankruptcy, to which he·
made solemn oath, he declared he had no interest in any
real estate, either under his own control or "*held by any
other person in trust for his use*," and had no property what-
ever in reversion, remainder, or expectancy.

If his oath in bankruptcy be true, his present claim must
be false.

To allow him, after passing safely through bankruptcy,.
now to claim that his uncle, A. H. Anderson, only held the
223 acres of land in secret trust for him, and sanction his,
title by judicial approval, would destroy all confidence in·
the verity of muniments on which legal titles rest, and in
which all, according to the policy of the law, have a right
to trust.

The consequences of such a precedent, strictly followed,.
would be alarming.    Uncertainty and doubt would hover
over every title issuing from a kindred predicament.

And it is safer for justice, and more seemly in a court of
equity, into which the litigant must come with clean hands,
that the appellee Clay should be held to the truth of his
sworn declarations when the rights of his creditors were in
jeopardy, rather than permit him to recant them when his·
uncle's creditors are in peril.    If he owned the 223 acres, he·
ought to have surrendered them to his assignee; and as he
swore he did not own any real estate in trust, it should be
presumed that he testified truly, and his present claim re-
jected.

This presumption is fortified by all the written evidence·
and the declarations put to record by. A. H. Anderson and
Clay himself.    And the *very instrument under which he·*

claims, it is admitted, falsely states the consideration and the manner of its payment.

Thus tainted by an untruth, deliberately acknowledged, and recorded and executed under circumstances and at a time which, according to all human experience, stamp it with grave suspicion, we are unable, in the pure light of equity, to see any other conclusion proper to adopt about this whole transaction than hold the parties to their solemn declarations embraced by the deed from Holly and the lease to Clay, wherein A. H. Anderson is stated to be the purchaser and owner, and Clay his tenant.

If this conclusion works any injustice to Clay, he can blame none save himself, for his conduct renders it absolutely necessary in support of the record evidence of title and the protection of creditors from frauds which would otherwise be perpetrated with impunity.

This action was brought by the assignee of A. H. Anderson and the appellant Bank, as one of his creditors with a proven claim, against said Anderson, Mary Anderson, A. A. Clay, &c., to set aside the deeds to each of them for the lands conveyed as above described, and for proper equitable relief; and the facts disclosed in the record are substantially as recited.

On motion of the appellees, the Bank was properly stricken from the record as a co-plaintiff, and ought not to have been allowed to file a cross-petition, because the legal and equitable right of action, on the facts stated, was in the assignee alone, whose right and duty it was to sue for the benefit of all creditors whose claims were proven or provable against A. H. Anderson, the bankrupt.

There were no exceptional facts stated by the Bank which made it a proper or necessary party.

The appellees moved the court to compel the assignee to elect whether he would prosecute his cause of action against Mrs. Anderson or the appellee Clay, which was overruled, and they excepted.

We do not think there was a misjoinder of causes of action, under section 83, Civil Code; for each right of action grew out of one cause against all of the defendants who participated in the fraud, which was perpetrated on the same day, under the influence of the same animus.

The actionable wrong was in fraudulently obstructing the collection of assets by the assignee, and the remedy is to remove the fraudulent obstructions by declaring the conveyances void.

And each of the appellees, Mary Anderson and A. A. Clay, were interested in the remedy invoked by the appellant assignee, and were properly made parties, as was substantially, if not literally said, in a similar case decided in New York, where the 167th section of the Code is substantially as section 111 of Myers' Kentucky Code, and section 83 of the present Code. (Jacot v. Boyle, &c., 17 Howard's Practice Reports, 106.)

Newman's Pleading and Practice, p. 460, adopts the same rule, and the last case named is cited in support of the text.

The appellees insist that there is no sufficient description of the land in the petition.

The description given in the petition is taken from the deeds under which appellees claim to hold, and the tract conveyed to Clay is described by metes and bounds.

It would be highly technical to declare the petition bad on demurrer, because of such a defect, if it be one; for if the deed is sufficiently certain to pass the title, and identify

the land, its description ought to render a petition attacking it for fraud good on a general demurrer.

A motion to make the petition, in respect to the description of the land deeded to Mrs. Anderson, more definite and certain, might have been appropriate; but we are satisfied that the appellees were apprised by the allegations of the petition of what land was sought to be recovered, and their answers cured any defect of the cause of action that may have existed in regard to the description of the land.

The circuit court had jurisdiction, as held in the case of Berry v. Branch and Adams, MS. Op., 1881, because the action is not an attack collaterally upon the discharge in bankruptcy of either Anderson or Clay; the object is to recover the assets which have been covered up from the creditors, for distribution amongst them, on the ground that the discharges are actually valid.

There is nothing in Thurmond v. Andrews and wife, 10 Bush, contrary to this view, as there is no attempt in this case to annul or disregard the discharges in bankruptcy.

The prayer is for a cancellation of the conveyances, a sale of the lands, and for general relief. This is sufficient under the old Code, although the prayer for a sale to pay the bank's debt alone cannot be legally granted. The pleader was mistaken in asking a limited application of the proceeds of the sale. They should be applied *pro rata* to all of the debts proven against the bankrupt's estate, and this distribution will be under the control of the courts, where no favoritism amongst creditors will be allowed.

The judgment dismissing the appellant Dudley's petition as assignee is reversed, and the cause remanded, with directions to adjudge the conveyances to Mrs. Mary Anderson for 129 acres, and to A. A. Clay for 223 acres,

executed on the 12th of January, 1874, fraudulent and void, and for further proper proceedings consistent with this opinion.

The appeal taken by the Farmers' Bank is dismissed.